CULPEPPER, Judge.
The David Shelton Amvets Post 60 sues Mrs. Andrus Sam for $2,900, representing a Bingo game jackpot allegedly won by her through fraud. The trial judge found plaintiff failed to prove fraud. Plaintiff appeals.
The substantial issues on appeal are: (1) Does plaintiff have the burden of proving fraud? (2) If so, did plaintiff prove fraud? (3) Did the trial court err in denying the motion for a new trial?
The plaintiff contends it is a veterans organization operating as a nonprofit corporation which provides scholarships to worthy college students. Since 1974, the organization has been conducting Bingo games three nights a week. Bingo games are regulated under LSA-R.S. 33:4861.1, et seq., which permits the operation of certain gambling activities by licensed organizations. The first license issued to plaintiff is dated October 1, 1975, which was about one month after the incident at issue here. Thus, for purposes of this case, plaintiff had no license and the Bingo game was illegal.
Amvets holds its games on premises owned by Mr. Waldred A. Fourcard, an officer of the organization. Amvets does *787 not pay Mr. Fourcard any rent for use of the building, but pays a “note on repairs” and for gaming equipment. The games are run by Mr. Fourcard with assistance from Mr. Ephriam Lee, some members of the Fourcard family and various college students.
Amvets obtains its equipment from the Bingo King Company and uses only Bingo King cards in its games. The cards are produced in different series according to size. Each card in a series has a registration number and a set pattern in which the game numbers appear. Every card with the same registration number also has the same game number pattern. Bingo King customers are furnished with a master sheet showing the number pattern for each card. As cards are used or lost, Amvets simply purchases duplicates. Consequently, there may be several cards in play having the same numbers.
Mr. Charles L. Dornbus, sales manager for Bingo King, testified the company regularly received reports of attempts to alter the cards. He also explained that any error in recording the registration number of a card would render the master sheet useless in checking the cards.
A player must purchase and register his card(s) before the game begins. The registration procedure consists of having both the registration number and the total number of cards purchased written on a white slip of paper, which is stamped with the date and the name and address of Amvets. There are no other identifying marks on the receipts.
Mr. Ephriam Lee calls all of the games for Amvets. When a person covers the required number of spaces on his card, he signifies the same by calling out “Bingo.” His card is then taken to Mr. Fourcard or Mr. Lee, who will call out the numbers on the card to see if the numbers have actually been called. The numbers are usually checked twice and the card is usually verified as having been registered. If there is a mistake, the card is returned to the holder and the game proceeds until the game is won.
The defendant went to Amvets Post 60 to play for the jackpot on or about August 20, 1975, along with her daughter, Barabra Lee, and a friend, Rose Montgomery. All of the ladies testified they purchased only one Bingo card each.
Mrs. Sam played the usual games prior to the jackpot game. The jackpot game was explained by the witnesses to be a Bingo game where the entire card had to be filled with the calling of 55 numbers or less. Mr. Fourcard kept a special record of the numbers called in the jackpot game to ensure only 55 numbers were called. During the jackpot game, Mrs. Sam called “Bingo.” The card was picked up at the table and shown to Mr. Fourcard, who in turn called out the numbers on the card to Mr. Ephriam Lee, Jr. When it was discovered that N -31 had not been called, the card was returned to Mrs. Sam. After three additional numbers were called, Mrs. Sam called out “Bingo” again, and the card was rechecked as it had been previously. Mr. Fourcard then declared an official Bingo and paid Mrs. Sam $2,900.
The validity of Mrs. Sam’s Bingo was first questioned by another player, Mrs. Lula Mae Sinegal, who lingered after the game was over to check her card. According to the testimony of Mrs. Sinegal, another unidentified player said she had heard Mr. Fourcard call out # 1685 as the registration number of Mrs. Sam’s winning card. This was the registration number on one of the 16 cards Mrs. Sinegal was playing. She lacked one number for a Bingo on a card she believed was identical to Mrs. Sam’s. Mrs. Sinegal called this to Mr. Fourcard’s attention and he sought to recheck the Bingo. Mr. Fourcard testified he observed one of the college students pick up three receipts from the table where Mrs. Sam had been seated. One of the receipts bore the numbers “1685” and “1690” placed over a slash mark and the number “2”.
The evidence is in conflict on two substantial points. First, Mrs. Sam and her witnesses testified they did not receive registration receipts on the night in question and had never received one at any time *788 they had played at Amvets. Plaintiff’s witnesses testified receipts were always given to players.
Second, Mrs. Sam and her witnesses testified they left their cards on the table. Mr. Fourcard testified the card was returned to Mrs. Sam and was not on the table immediately after she left. The winning card was never produced at trial.
It was plaintiff’s position at trial that # 1685 was the registration number of Mrs. Sam’s card. Several of the numbers in the number pattern on this card were not among those called in the jackpot game. Consequently, plaintiff contends Mrs. Sam altered her card and won the jackpot by fraud. No explanation was made as to how the card was altered. Defendant testified she could not recall her card number and denied altering any numbers:
The basic issues at trial were the burden of proof necessary to prove the fraud, and whether this burden was met. In written reasons, the trial judge concluded fraud must be established by proof stronger than the mere preponderance of the evidence and found as follows:
“There was not enough proof to show that Mrs. Sam received Card No. 1685 and it was only Mr. Fourcard’s testimony that that was the serial number on the winning card. As for the card being altered, the Court feels that in view of the surroundings and the closeness of the crowd at these games it would be impossible to alter some seven (7) numbers, together with the denial of the defendant and three witnesses that any alterations were made.
“After hearing the testimony, considering the evidence and the above principles of law this Court has concluded that the plaintiff has failed in its burden to prove that there was a fraud practiced upon it by the defendant.”
BURDEN OF PROOF
On appeal, plaintiff contends the trial court erred in finding plaintiff had the burden of proving fraud and in finding fraud was not proved. Additionally, plaintiff argues the jackpot was paid through error or mistake and urges LSA-C.C. Articles 2301 and 2302, dealing with “Payment of a Thing Not Due”, as the basis for its recovery.
The defendant contends proof of fraud is required since plaintiff’s action is one for the recovery of a gambling debt under LSA-C.C. Articles 2983 and 2984, which provide:
“Art. 2983. The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.
And as to such games, the judge may reject the demand, when the sum appears to him excessive.”
“Art. 2984. In all cases in which the law refuses an action to the winner, it also refuses to suffer the loser to reclaim what he has voluntarily paid, unless there has been, on the part of the winner, fraud, deceit, or swindling.”
We agree with the defendant’s contentions. Bingo is commonly known as a game of chance and, as such, must be considered a form of gambling. Our strong public policy against gambling is embodied in the Louisiana Constitution of 1974, Article 12, Section 6, which provides:
“Neither the state nor any of its political subdivisions shall conduct a lottery. Gambling shall be defined by and suppressed by the legislature.”
The legislature has defined gambling in LSA-R.S. 14:90 as follows:
“§ 90. Gambling
“A. Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
“Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.”
*789 The legislature has also provided that some forms of gambling shall be allowed under regulation. The Charitable Raffles, Bingo and Keno Licensing Law, LSA-R.S. 33:4861.1, et seq., provides for the lawful operation of Bingo games under license and special conditions. The evidence in this case shows, however, that Amvets had not satisfied all of the conditions of the statute. Mr. Fourcard testified at trial that Amvets had never submitted reports required under LSA-R.S. 33:4861.13. The evidence also established Amvets had no permit or license prior to October 1, 1974.
Since plaintiff was not operating in compliance with LSA-R.S. 33:4861.1, et seq., we need not reach the question of whether the legalization of Bingo games allows the plaintiff to recover a payment made through error or mistake. See Marceaux v. V.F.W. Post 2130, 337 So.2d 923 (3rd Cir. 1976). The statute does not apply here. This action is controlled by LSA-C.C. Articles 2983 and 2984 quoted above. Under these articles, plaintiff cannot maintain an action for the recovery of a gambling loss unless the payment was induced by the winner’s fraud. Accordingly, proof of fraud was an essential element in plaintiff’s case.
PROOF OF FRAUD
The record fully supports the trial court’s finding that plaintiff failed to prove fraud. Plaintiff’s entire case rested on the contention Mrs. Sam was playing card # 1685. It is apparent the trial judge determined plaintiff failed to prove that fact by any standard of proof. Based on the evidence, we cannot say the trial judge was clearly wrong.
MOTION FOR NEW TRIAL
Plaintiff filed a motion for new trial on grounds listed in ’ LSA-C.C.P. Article 1972(1) and (2) which provide:
“Art. 1972. Peremptory grounds
“A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) Where the judgment appears clearly contrary to the law and the evidence;
(2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial;”
In the motion, plaintiff alleged a new trial was necessary to take the testimony of Mr. Jack Suydam, an employee of the Lake Charles District Attorney’s office. Mr. Suydam was subpoenaed by plaintiff but released before trial when the witness told plaintiff he had no useful information. During trial, the defendant testified Mr. Suydam was a friend of hers. Plaintiff now contends Mr. Suydam should be made to testify. Plaintiff does not contend, however, the witness has any new evidence to offer.
The record shows Mr. Suydam was one of two investigators for the DA’s office who talked to Mrs. Sam after plaintiff made an official complaint about the Bingo game. The other investigator did testify at trial. There is nothing to suggest Mr. Suydam’s testimony would provide any additional facts.
Plaintiff also alleged a new trial should be granted in order to obtain testimony from a handwriting expert. Plaintiff introduced into evidence certain slips of paper referred to as “registration receipts.” These slips had numbers written in red ink on the reverse side. . Plaintiff had these slips in its possession since 1975 and failed to have them analyzed before trial in 1979. We see no reason why plaintiff could not have had an analysis made during this time.
We point out that this suit was tried almost four years after filing. Plaintiff had ample opportunity to discover anything pertinent to this case. We find the trial judge was correct in denying the motion for new trial.
For the reasons assigned, the judgment appealed is affirmed at plaintiff’s costs.
AFFIRMED.